310 F.3d 238
 Bob COGAN; Mitch Bearden; Shawn Bryan; David M. Connelly; Trey Corish; Wade Crawford; James Crovato; Thomas Davis; Marc Durand; James Garrity; John Gucciardo; Dina Hanan; Ann Harris; Bob Holt; Chris Hybarger; Jeff K. Layman; Patrick McCullom; Todd McDonald; David M. McLaughlin; Ken Moorman; Michael Moroney; Tom Nauta; Gary Nielsen; John Noren; Paul Oleyar; David O'Shea; Patricia Purdy; Bob Pyskadlo; Robert J. Ruinen; Amy Straight; Brian Stumm; Michael Whalen, Plaintiffs, Appellants,
v.
PHOENIX LIFE INSURANCE COMPANY; Phoenix Home Life Mutual Insurance Company Group Sales Representative Deferred Compensation Plan; Benefit Plans Committee Of Phoenix Home Life Mutual Insurance Company, Defendants, Appellees.
 No. 02-1660.
 United States Court of Appeals, First Circuit.
 Heard October 11, 2002.
 Decided November 8, 2002.
 
 Chad A. Cloutier, with whom Joseph M. Cloutier and Joseph M. Cloutier Associates, P.A., were on brief, for appellants.
 Seth W. Brewster, with whom Valerie A. Wright and Verrill & Dana, LLP, were on brief, for appellees.
 Before LYNCH, Circuit Judge, STAHL, Senior Circuit Judge, and HOWARD, Circuit Judge.
 STAHL, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellants Bob Cogan et al. appeal from the district court's dismissal of their complaint alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and contract law in connection with a deferred compensation plan. We affirm.
 
 I. BACKGROUND
 
 2
 Plaintiffs were formerly employed as sales representatives of Phoenix Home Life Mutual Insurance Company ("Phoenix I"), now known as Phoenix Life Insurance Company, and are participants in the Phoenix Home Life Mutual Insurance Company Group Sales Representative Deferred Compensation Plan ("the Plan"). Defendant-appellees include Phoenix Life Insurance Company, Phoenix Home Life Mutual Insurance Company, Phoenix Home Life Mutual Insurance Company Group Sales Representatives Deferred Compensation Plan, and the Benefit Plans Committee of Phoenix Home Life Mutual Insurance Company.[1]
 
 
 3
 Plaintiffs alleged the following facts in their complaint: The Plan was established in 1997 as a non-qualified employee benefit plan subject to ERISA. Its purpose was to provide supplemental retirement benefits for a select group of sales employees. The Plan provided for retroactive benefits for the years 1994-96. From 1997 through 1999, Phoenix I credited each plaintiff's participant account in the Plan with a benefit amount calculated in accordance with Article 4.2 of the Plan. No funds were actually set aside, segregated or held in trust for any plaintiff. Rather, the aggregate amount of the accounts was and remains part of the general liabilities of Phoenix I.
 
 
 4
 Shortly before January 1, 2000, Phoenix I formed a subsidiary called Phoenix American Life Insurance Company ("Phoenix American"). Plaintiffs' employment was transferred to Phoenix American, although this change was not disclosed to them at the time. On or about December 13, 1999, GE Financial Assurance Holdings, Inc. ("GEFA") announced that it had agreed to purchase Phoenix American from Phoenix I. The sale closed on April 1, 2000. Plaintiffs alleged in their complaint that since that date, they have been employed by GEFA.[2]
 
 
 5
 In the original Plan, section 5.2 specified the conditions under which a participant could receive a benefit payment:
 
 
 6
 Payment of benefit amounts ... shall be made ... solely upon the occurrence of the following events and subject to the following conditions:
 
 
 7
 a. attainment of normal, early or deferred retirement age ...;
 
 
 8
 b. upon the Participant's death if actively employed by the Company at the date of death;
 
 
 9
 c. upon the fifth anniversary of the Participant's having been determined as having a permanent and total disability....; or
 
 
 10
 d. upon elimination of the Participant's position by the Company.
 
 
 11
 The Plan also contained a clause permitting amendment:
 
 
 12
 7.1. The Company shall have the right to amend this Plan at any time and from time to time, including a retroactive amendment. Any such amendment shall become effective upon the date stated therein, and shall be binding on all Participants and Beneficiaries, except as otherwise provided in such amendment; provided, however that said amendment shall not adversely affect benefits accrued, but not yet payable as of the date of the amendment or benefits payable to a Participant or Beneficiary where the cause giving rise to such benefit (e.g., retirement) has already occurred.
 
 
 13
 On March 28, 2000, just before GEFA's purchase of Phoenix American, the Benefits Plan Committee adopted the First Amendment to the Plan. The First Amendment stated, in relevant part:
 
 
 14
 1. Anything in Article IV of the Plan to the contrary notwithstanding, all benefit accruals under the Plan shall cease accrual of Benefits effective as of March 31, 2000.
 
 
 15
 * * * *
 
 
 16
 3. All other terms, provisions and conditions of the Plan shall continue to apply except that for purposes of Section 5.2 and 5.3 referenced [sic] to "Company", "Pension Plan" and "Welfare Benefit Plan" shall be applied to mean GE Financial Assurance Holdings, Inc. or such subsidiary or affiliate thereof by which a Participant is employed after the effective date hereof....
 
 
 17
 4. The effectiveness of this Amendment is contingent upon the occurrence of the closing for the purchase of Phoenix American Life Insurance Company by GE Financial Assurance Holdings, Inc., and this Amendment shall be void and of no force or effect if such closing does not occur.
 
 
 18
 On or around November 7, 2001, plaintiffs filed a complaint in the United States District Court for the District of Maine asserting claims of ERISA violations, breach of contract and promissory estoppel. On April 4, 2002, the magistrate judge issued a recommended decision allowing defendants' motion to dismiss for failure to state a claim. He held that plaintiffs' contract claim was preempted by ERISA, and that defendants did not violate ERISA by failing to provide plaintiffs with immediate payment of their accrued benefits upon the sale of Phoenix American Life to GEFA.[3] The district court affirmed the recommended decision on May 6, 2002.[4]
 
 II. DISCUSSION
 
 19
 The district court dismissed plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We review the dismissal de novo, "accepting as true all well-pleaded factual averments and indulging all reasonable inferences in the plaintiff's favor." SEC v. SG Ltd., 265 F.3d 42, 46 (1st Cir.2001) (citation and internal quotation marks omitted). "If the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory, we must set aside the order of dismissal." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)).
 
 
 20
 Plaintiffs contend in Count I of the complaint that defendants violated ERISA by failing to provide plaintiffs with "immediate lump-sum payment of their accrued benefits" upon the sale of Phoenix American to GEFA. Specifically, they argue that the sale of Phoenix American eliminated their positions by making them employees of GEFA, thus triggering their right to receive benefits pursuant to section 5.2(d) of the Plan.
 
 
 21
 Such payment is precluded by the First Amendment to the Plan, which was promulgated under Phoenix I's express reservation of right in section 7.1. See Kemmerer v. ICI Americas Inc., 70 F.3d 281, 288 (3d Cir.1995) ("[N]othing in ERISA prohibits the parties from contracting to limit the employer's right to amend or terminate a plan."). The First Amendment took effect at the time of the closing and amended section 5.2(d) to provide, in relevant part, that payment of benefits becomes due only when plaintiffs' positions are eliminated by GEFA, not by Phoenix Home Life. Plaintiffs do not allege that GEFA has eliminated their positions.
 
 
 22
 Plaintiffs attempt to evade the effect of the First Amendment to the Plan by contending that it violates ERISA's anti-cutback provision, 29 U.S.C. § 1054(g)(1). Section 1054(g) provides, in relevant part:
 
 
 23
 Decrease of accrued benefits through amendment of plan
 
 
 24
 (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
 
 
 25
 (2) For purposes of paragraph (1), a plan amendment which has the effect of —
 
 
 26
 (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
 
 
 27
 (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.
 
 
 28
 The anti-cutback provision does not apply here, however, as the Plan is unquestionably a "top hat" employee benefit plan. ERISA describes such a plan as "unfunded" and "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." Id. § 1101(a)(1). The Plan itself echoes this statutory definition, stating that "[t]his Plan is an unfunded plan for a select group of highly compensated Participants." Thus, plaintiffs cannot dispute (and did not dispute below) that the Plan is a top hat plan within the meaning of ERISA.
 
 
 29
 Top hat plans are expressly exempted from ERISA's anti-cutback provision. Demery v. Extebank Deferred Comp. Plan (B), 216 F.3d 283, 287 (2d Cir.2000). Section 1054(g) is contained in Part 2 (Participation and Vesting) of ERISA. The first section of Part 2, "Coverage," provides, in relevant part:
 
 
 30
 This part shall apply to any employee benefit plan ... other than —
 
 
 31
 * * * *
 
 
 32
 (2) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees....
 
 
 33
 29 U.S.C. § 1051(2) (emphasis added). Accordingly, we conclude that the First Amendment did not violate ERISA's anti-cutback provision, and affirm the dismissal of that claim.
 
 
 34
 Finally, plaintiffs argue that the district court erred in dismissing Count II of their complaint, which purports to set forth a breach of contract claim under federal common law, apparently apart from ERISA. We are unaware of any such independent cause of action. "[A] suit by a beneficiary to recover benefits from a covered plan ... falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). If the breach of contract claim for these top hat benefits arose under state law, it would be preempted. The plaintiffs contend that top hat plans are a "rare species" of ERISA plan and must be interpreted in keeping with common law contract principles, citing Kemmerer, 70 F.3d at 288. Kemmerer makes clear, however, that this contract interpretation is to be applied within the context of ERISA; it does not provide for a separate common law contract claim. Id. Accordingly, we agree with the district court that a separate cause of action for breach of contract cannot lie.[5]
 
 
 35
 
 Affirmed.
 
 
 
 
 Notes:
 
 
 [1]
 Defendant Benefit Plans Committee of Phoenix Home Life Mutual Insurance Company is the administrator of the Plan
 
 
 [2]
 At oral argument, however, there was some suggestion that plaintiffs were employed by Phoenix American, as a wholly-owned subsidiary of GEFA
 
 
 [3]
 The district court also dismissed Count III of the complaint, holding that it failed to allege the necessary elements of a claim of promissory estoppel. Plaintiffs do not revisit that issue on appeal
 
 
 [4]
 Copies of the Plan and the First Amendment were attached to the complaint, and were properly considered by the district court on the motion to dismissSee Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint ... without converting the motion into one for summary judgment").
 
 
 [5]
 We have considered plaintiffs' other arguments — that the court wrongly decided facts and failed to weigh the plan administrator's conflict of interest — and conclude that they do not warrant reversal