**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0443n.06
Filed: June 27, 2006

**No. 05-3707**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JACK W. SIMPSON, SR., | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| MEAD CORPORATION, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |

BEFORE:    KENNEDY, COLE, and McKEAGUE, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant Jack W. Simpson, Sr., appeals the denial of early retirement benefits upon termination from his employment with Defendant-Appellee Mead Corporation ("Mead"). Before us on appeal are the following issues: 1) whether the "Mead Management Income Parity Plan" ("1982 plan"), or the plan as amended in 1992, controls Simpson's asserted entitlement to early retirement benefits; and 2) if the 1982 plan governs, whether Simpson is entitled to early retirement benefits. Because we find that Simpson is not entitled to early retirement benefits regardless of which plan applies to him, we **AFFIRM** the district court's judgment in favor of Mead.

**I. BACKGROUND**

On June 21, 1982, Simpson began his employment with Mead as President of its Data Central division following his recruitment from IBM. On July 1, 1985, when he became eligible,

Simpson elected to participate in the 1982 plan. The 1982 plan was "designed to assist Mead in 'recruit[ing] mid-career executives who could not earn adequate retirement benefits under the [ERISA] qualified retirement plans of the Company because they will have limited credited services at retirement.'" In 1985, the 1982 plan was amended and renamed the "Supplemental Executive Retirement Plan" ("SERP"). The plan was again amended in 1992.[1]

On November 2, 1992, over ten years after Simpson commenced his employment with Mead, he was terminated at the age of fifty-one. In its termination letter to Simpson, Mead informed him that he was "vested in the Mead Retirement Plan, . . . and the Mead Supplemental Executive Retirement Pension" and that he "may elect to receive benefits under the first . . . plan[] as early as age 55, and under the latter plan at age 62." Simpson was also notified by letter of the terms and conditions of his separation. Simpson signed a revised version of this letter on December 10, 1992. The letter specified that it would "not affect [Simpson's] rights under the Mead Retirement Plan, the Mead Excess Benefits Plan, the Mead Supplemental Executive Retirement Plan and the Mead Salaried Savings Plan."

On July 29, 1993, Simpson sent a letter to Mead requesting allowance of early retirement benefits under the financial hardship provision of the SERP. Mead denied Simpson's request. Simpson renewed his request in 1998, but it was again denied. On January 5, 2001, Mead's corporate counsel responded to a letter from Simpson's attorney that asserted entitlement to benefits

---

[1] The 1992 plan provides benefits for those over the age of 62. At the time this litigation commenced, Simpson had not reached that age.

under the 1982 plan. Mead disputed that Simpson was covered under the 1982 plan or that he was entitled to early retirement benefits.

Simpson brought suit in state court, seeking damages for breach of contract and breach of fiduciary duties. Mead removed the case to federal district court because the action involved a claim arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Simpson then amended his complaint to allege ERISA-specific causes of action. When the district court ruled on cross-motions for judgment on the administrative record, the following issues were before it: 1) whether Simpson was entitled to early retirement benefits under the 1982 plan; 2) whether Simpson was entitled to benefits under the 1985 amendments to the 1982 plan; 3) whether Simpson was entitled to damages due to Mead's failure to timely produce plan documents; and 4) whether Simpson was entitled to attorneys' fees. The district court concluded that: 1) the 1982 plan covered Simpson but that he was not entitled to early retirement benefits under it; 2) the 1985 plan did not provide the quality and quantity of benefits Simpson was entitled to; 3) Simpson was not entitled to damages due to Mead's failure to produce plan documents in a timely fashion; and 4) Simpson was not entitled to attorneys' fees.

Simpson filed a timely appeal. The issues on appeal are 1) whether the 1982 plan or the 1992 covers Simpson; and 2) if the 1982 plan covers Simpson whether Simpson is entitled to early retirement benefits under that plan, because the record reflects that Simpson is not entitled to benefits under the 1992 plan.

## II. ANALYSIS

### A. Standard of Review

We review a district court's judgment on the administrative record in an ERISA appeal *de novo*, but apply the same legal standard that the district court applied, if appropriate, when it reviewed the administrative record. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)). A *de novo* standard of review of the administrative record is proper "'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Hunter v. Caliber Sys.*, 220 F.3d 702, 710 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). In this case, the district court applied a *de novo* standard of review in ruling on the administrative record because it found that the plan did not give the plan administrator discretion. The parties agree that *de novo* review of the administrative record is proper on appeal. Therefore, we review the plan administrator's determination and the district court's judgment on the administrative record *de novo*.

In an ERISA contract case, we apply "'federal common law rules of contract interpretation in making [a] determination.'" *Univ. Hosps. v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 431 (6th Cir. 2006) (quoting *Perez*, 150 F.3d at 556). "'The general principles of contract law dictate that [we] interpret[] the Plan's provisions according to their plain meaning, in an ordinary and popular sense.'" *Id*. (citation omitted). Under a plain meaning analysis, we "give[] effect to the unambiguous terms of the contract." *Id*. (citation and quotation omitted).

## B. The SERP

Simpson and Mead agree that the 1982 plan, like the 1992 plan, is a "top hat" plan.[2]  "A 'top hat plan' is . . . 'a plan which is unfunded and is maintained by an employer primarily for the purposes of providing deferred compensation for a select group of management or highly compensated employees.'" *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 250 n.2 (6th Cir. 1989) (quoting 29 U.S.C. § 1051(2)).  Top hat plans are almost completely exempt from "ERISA's substantive requirements." *Senior Executive Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.)*, 89 F.3d 143, 148 (3d Cir. 1996), *cert. denied*, 519 U.S. 1110 (1997).  Under 29 U.S.C. § 1051(2), top hat plans are exempted from "ERISA's minimum participation standards, minimum vesting standards, . . . various other content requirements," *id*. at 148–49, and "ERISA's anti-cutback provision," *Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242 (1st Cir. 2002) (citing *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000)).  Under § 1081(a)(3), top hat plans are exempted from "ERISA's minimum funding requirements." *In re New Valley Corp.*, 89 F.3d at 149.  Under § 1101(a)(1), top hat plans are exempted from "ERISA's fiduciary responsibility provisions, including the requirement of a written plan, the need to give control of plan funds to a trustee, the imposition of liability on fiduciaries, and limitations on transactions and investments." *Id*.  Under § 1051(2), top hat plans are exempted from "ERISA's

---

[2] Simpson and Mead argue that we must determine first whether the 1982 or 1992 plan controls Simpson's eligibility for early retirement benefits.  To this end, both parties advance theories on the application of the federal common law of contracts to this issue.  However, because Simpson has no entitlement to the asserted benefits under either plan, there is no need to decide which plan would apply under federal common law.

reporting and disclosure requirements" but subject to administrative regulations. *Id.* (citing 29 C.F.R. § 2520.104-23 (for top hat plans it established minimal alternative reporting requirements)). Top hat plans are basically only "subject to the enforcement provisions" of ERISA. *Id.*; *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n.10 (6th Cir. 2002). *See also id.* (top hat "plans are exempt from much of ERISA's regulatory scheme, but are covered by the definitions and enforcement provisions of ERISA" (citing *Kemmerer v. ICI Am. Inc.*, 70 F.3d 281, 286–87 (3d Cir. 1995), *cert denied*, 517 U.S. 1209 (1996))).

While both the 1982 and the 1992 plans provide that the laws of the state of Ohio are to govern their interpretation, ERISA provides that federal law supersedes "all state laws that 'relate to an ERISA plan.'" *Unicare Life & Health Ins. Co. v. Craig*, 157 F. App'x. 787, 790–91 (6th Cir. 2005) (quoting 29 U.S.C. § 1144(a)). "A particular state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Id.* at 791 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).

Simpson argues that, under the 1982 plan, he is entitled to early retirement benefits because he retired "with company consent" prior to age fifty-five. Mead counters that Simpson was separated from employment prior to age fifty-five and, therefore, is not entitled to early retirement benefits under the 1982 plan. The district court agreed with Mead: "While Simpson is free in his personal affairs to refer euphemistically to have been fired as 'early retirement with company consent,' this does not seem a natural reading." However, the district court also determined that Mead's interpretation of the contract was not a natural one and looked to the larger context of the

contract to ascertain the meaning of the 1982 plan in determining that Simpson was not entitled to

early retirement benefits.

Article 4 of the 1982 plan reads, in pertinent part, as follows:

### Article 4.  Benefits for Eligible Executives

4.1 *Basic Retirement Benefits.*
(a) *Eligibility*.  An Eligible Executive shall receive a basic retirement benefit upon
termination of service with the Company on or after his 62nd birthday.

4.2 *Early Retirement Benefits*.
(a) *Eligibility*.  An Eligible Executive shall receive an early retirement benefit under
the Plan following termination of his service with the Company prior to his 62nd
birthday.

. . .

(c) *Commencement and Form.*  For early retirement between the ages of 55 and 62,
or prior to age 55 with written Company consent, monthly early retirement benefit
payments shall be paid . . .  following the latest of (i) the date an Eligible Executive
terminates his service with the Company, (ii) his 55th birthday, or (iii) the first of
any calendar month after his 55th birthday . . . For retirement prior to age 55 without
written Company consent, monthly early retirement benefit payments shall be paid
. . . commencing as of the first day of the calendar month coincident with or next
following an Eligible Executive's 62nd birthday.

We first look to Article 4.2(c).  The parties disagree as to the meaning of "with written

Company consent" and as to what that phrase modifies.  If the phrase modifies "monthly early

retirement benefit payments shall be paid," as Mead argues and as the district court indicated,[3] then

Mead could withhold consent from payment of early retirement benefits and Simpson would have

no argument for an entitlement.  It is clear from the record that Mead did not consent to the early

---

[3] The district court stated that "'with written company consent,' modifies the words
following the comma."

payment of retirement benefits. Therefore, under this reading of the 1982 plan, Simpson cannot prevail.

As it is clear that Mead did not consent to pay Simpson early retirement benefits, Simpson must rest his claim on an alternative interpretation of the 1982 plan that "with written Company consent" modifies "early retirement . . . prior to age 55." Even if we were to assume that this alternative interpretation of the 1982 plan is correct, Simpson cannot prevail. If Mead gave such consent, then it follows that Simpson would be entitled to early benefits. Under this reading, if an Eligible Executive — a term defined in the 1982 plan — retires on his own between the ages of fifty-five and sixty-two, he is entitled to early benefits. However, if an Eligible Executive retires prior to age fifty-five, he must do so with written company consent in order to receive early benefits. If Mead does not consent to the early retirement, then the Eligible Executive would have to wait until he reached the age of sixty-two to receive his retirement benefits. Thus, under this reading it is clear that if an Eligible Executive under the 1982 plan retired or left Mead's employ of his own volition, and Mead did not consent to this early retirement, then the Eligible Executive would not lose his benefits; he merely could not collect them until he attained the age of sixty-two. It makes no sense at all for an employer to award early retirement benefits but not to pay them until the normal retirement age was reached.

Yet, even if we were to accept Simpson's proposed interpretation of the plan his claim sill fails as Simpson cannot show, as he must, that termination amounts to retiring with company consent. Such a reading is contrary to the meaning of "consent" in the ordinary and popular sense. The record reflects that Mead terminated Simpson, not that it gave consent to his early retirement.

It is plainly unreasonable to infer that, when Mead informed Simpson that he was terminated, Mead was consenting in writing to Simpson's early retirement.

In conclusion, it does not matter what "with written Company consent" modifies, because: 1) if the phrase modifies "monthly early retirement benefits shall be paid" Simpson is not entitled to early retirement benefits, and 2) if the phrase modifies "early retirement . . . prior to age 55" Simpson is not entitled to early retirement benefits. Therefore, under any interpretation of the 1982 plan, Simpson is not entitled to the retirement benefits he seeks.

### III.  CONCLUSION

Because Simpson is not entitled to early retirement benefits under the 1982 plan regardless of what "with written Company consent" modifies, and because Simpson concedes he is not entitled to early retirement benefits under the 1992 plan, we **AFFIRM** the judgment of the district court.