**VOYA INSTITUTIONAL TRUST COMPANY, Plaintiff,**

v.

**UNIVERSITY OF PUERTO RICO, et al., Defendants.**

**University of Puerto Rico, Plaintiff,**

v.

**Voya Institutional Trust Company, Defendant.**

**Civil No. 16–2519 (FAB), Civil No. 17–1014 (FAB)**

United States District Court, D. Puerto Rico.

Signed July 21, 2017

---

Michael B. Fisco, Pro Hac Vice, Robert L. Schnell, Pro Hac Vice, Faegre Baker Daniels LLP, Minneapolis, MN, Katarina Stipec–Rubio, Pedro Jimenez–Rodriguez, Adsuar Muniz Goyco Seda & Perez Ochoa PSC, San Juan, PR, Sharlene M. Malave–Vallines, Arecibo, PR, for Plaintiff.

Edgardo Barreto–Pagan, Guaynabo, PR, Wandymar Burgos–Vargas, P. R. Department of Justice, Federal Litigation Division, Jose L. Ramirez–Coll, Antonetti Montalvo & Ramirez–Coll, Ricardo L. Ortiz–Colon, San Juan, PR, for Defendants.

## OPINION AND ORDER

FRANCISCO A. BESOSA, United States District Judge

Before the Court are two civil actions pertaining to a voluntary deferred compensation plan for eligible University of Puerto Rico ("UPR") employees. Voya Institutional Trust Company ("Voya") commenced an action against the UPR, Governor Alejandro García–Padilla ("García"),[1]

---

1. Former Governor García left office on January 2, 2017. He was succeeded by the current Governor of Puerto Rico, Ricardo Antonio Rosselló–Nevares.

and the President of the UPR Celeste Freytes ("Freytes")[2] in this Court. See Voya Institutional Trust Co. v. Univ. of P.R., et al., Case No. 16–2519 (FAB). Subsequently, the UPR filed suit against Voya before the Puerto Rico Court of First Instance, San Juan Superior Division. See Univ. of P.R. v. Voya Institutional Trust Co., Case No. 17–1014 (FAB). After removing this second action to federal court, Voya moved for consolidation pursuant to Federal Rule of Civil Procedure 42. (Case No. 17–1014, Docket No. 11; Case No. 16–2519, Docket No. 28.)

For the reasons set forth below, the Court **TRANSFERS** both actions to Judge Laura Taylor Swain, the judge presiding over the Title III[3] case for the Commonwealth of Puerto Rico, Case No. 17–bk–3283 (LTS), pursuant to section 306(d)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.[4]

## I. BACKGROUND

Both matters before this Court concern a voluntary deferred compensation plan ("plan") consisting of $100 million held in trust for plan participants.[5] (Docket No. 18 at p. 1.) Voya serves as trustee for the plan. (Docket No. 1 at p. 3.) Assets belonging to the plan, identified as a "rabbi trust" or a "top hat" deferred compensation plan,[6] are exempt from taxation until distribution to plan participants. (Docket No. 18 at p. 1.) Plan assets, however, remain subject to the claims of the UPR's general creditors in the event of insolven-

2. Celeste Freytes is no longer the president of the UPR. Nivia Fernández–Hernández succeeded Freytes as interim president, but resigned on May 24, 2017. "Puerto Rico University Chief Resigns Ahead of Arrest Order." NBC News (May 24, 2017), http://www.nbcnews.com/news/latino/puerto-rico-university-chiefresigns-head-arrest-order-n763976. The board of governors for the UPR designated Darrel Hillman Barrera to serve as interim president on July 12, 2017. "Eligen a Darrel Hillman como presidente interino de la UPR," El Nuevo Dia (July 12, 2017), https://www.elnuevodia.com/noticias/locales/nota/eligenadarrelhillmancomopresidenteinterinodelaupr–2339896/# cxrecs_s.

3. The filing of a Title III petition initiates the adjustment of debts, much like the "filing of a petition commences the Bankruptcy Code case of the debtor named in the petition." 9–Collier on Bankruptcy § 1002, at 1002.04 (16th 2017). Section 304 of PROMESA provides that a "voluntary case under this title is commenced by filing with the district court a petition by the Oversight Board." 48 U.S.C. § 2164(a). Similarly, "a voluntary case under a chapter of [the Bankruptcy Code] is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter" pursuant to 11 U.S.C. section 301.

4. Section 306 states that a "district court shall transfer any civil proceeding arising under this title, or arising in or related to a case under this title, to the district court in which the case under this title is pending." 48 U.S.C. § 2166(d)(3).

5. The Court will rely on Voya's factual allegations for the sake of expediency, not as an endorsement of Voya's asserted causes of action.

6. A top hat plan is "unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). A rabbi trust is "an irrevocable trust that lets an employer set aside funds for the benefit of an employee in a top hat plan." Ezenial Inc. v. Nguyen, 536 B.R. 485, 512 (D.N.H. Bankr. 2015). To qualify as a rabbi trust, the trust property must "remain property of the employer and be subject to the claims of creditors in the event the employer becomes insolvent. That is, the employee has no right to the trust res until disbursement in accordance with terms of the employer's deferred compensation plan." Id. at 511. The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., is inapplicable to top hat plans. Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 242 (1st Cir. 2002).

cy. According to the plan agreement, if Voya determines that the UPR is insolvent, Voya must "discontinue payments to Plan Participants or their beneficiaries and shall hold the assets of the Trust for the benefit of [the UPR's] general creditors."[7] Id. at p. 5.

The trust agreement provides for early withdrawals on an "unforeseeable emergency" basis, such as an unexpected illness or death. The trust agreement, however, does not permit early withdrawals for "foreseeable expenditures normally budgetable." Id. at p. 8. Voya has denied 140 requests for withdrawals based on unforeseeable emergencies, rejecting attempts by plan participants to access $33 million of plan assets. Id. at p. 9. On May 31, 2016, Voya received a removal notice from the UPR, demanding that Voya transfer all plan property to the UPR's board of trustees.[8] Id. Shortly thereafter, the UPR mailed a letter to plan participants informing them of the following: the UPR terminated Voya as trustee, the UPR designated its board of trustees as successor trustee, the UPR intended to dissolve the plan, and the board of trustees would distribute the plan property accordingly. Id. at pp. 9–10.

## II. DISCUSSION

Voya seeks a declaratory judgment clarifying its responsibilities vis-à-vis the transfer of plan assets to the UPR board of trustees. (Case No 16–2518, Docket No.

1 at pp. 13–16.) In particular, Voya requests that the Court determine whether this transfer would violate the plan agreement, the Puerto Rico Emergency Moratorium and Rehabilitation Act ("Moratorium Act"), P.R. Act No. 21–2016, and PROMESA, 48 U.S.C. §§ 2101 et seq. The UPR, however, requests that the Court of First Instance grant preliminary and permanent injunctive relief to compel transfer of plan assets. (Case No. 17–1014, Docket No. 5–1 at p. 10.) Significantly, the UPR moves to "transfer immediately and without any delay the totality of the funds or assets of the Plan deposited within the Rabbi Trusts to the fiduciaries or Successor Trustees." Id. Essentially, the UPR demands that Voya relinquish the $100 million in plan property, a request that Voya refuses to fulfill because, Voya argues, doing so may violate PROMESA.

### A. PROMESA

On June 30, 2016, President Barack Obama signed PROMESA into law. PROMESA seeks to address the dire fiscal emergency in Puerto Rico, and sets forth "[a] comprehensive approach to [Puerto Rico's] fiscal, management and structural problems and [ ... ] a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA § 405(m)(4), 48 U.S.C. § 2194(m)(4). Among PROMESA's provisions is an automatic stay of all debt-related litigation against the Commonwealth and covered instrumentalities,

---

7. The plan agreement states that the UPR is insolvent if "(i) [the UPR] is unable to pay its debts as they become due, or (ii) [the UPR] is subject to a pending proceeding as a debtor under the United States Bankruptcy Code." (Docket No. 1 at p. 6.) Voya cites the Commonwealth of Puerto Rico's Audited Financial Statements from June 30, 2016, which state that "[t]he UPR's ability to continue receiving similar operational support and financing from the Commonwealth and GDB is uncertain." Id. at p. 7. The UPR relies heavily on

contributions from the Commonwealth to cover $1.7 billion in operating expenses. Id. Furthermore, Voya noted that the UPR is embroiled in bondholder litigation. See U.S. Bank Trust Nat'l. Assn. v. Commonwealth of P.R., Civil No. 16–2510 (FAB).

8. The UPR avers that Voya received an additional notice of removal on May 27, 2016. (Case No. 17–1014, Docket No. 5–1 at p. 2.) This fact is immaterial to the subject matter jurisdiction analysis.

including the UPR, which was or could have been commenced before the statute's enactment. 48 U.S.C. § 2194(b). This component of PROMESA is "essential to stabilize the region for the purposes of resolving" the Commonwealth's financial crisis. Id. § 2194(m)(5). With the automatic stay, Congress "allow[ed] the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits." Id. § 2194(n)(2).

The automatic stay, however, is "limited in nature," 48 U.S.C. § 2194(m)(5)(B), and remains in effect until the earlier of (1) February 15, 2017, with a possible extension of sixty or seventy-five days, or (2) the date on which the Oversight Board [9] files a petition on behalf of the Government of Puerto Rico or any of its instrumentalities to commence debt-adjustment proceedings pursuant to PROMESA's Title III. Id. § 2194(d).

The automatic stay expired on May 1, 2017. Subsequently, the Oversight Board filed Title III petitions on behalf of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees' Retirement System ("ERS") and the Puerto Rico Electric Power Authority ("PREPA").[10] Because the Commonwealth of Puerto Rico, COFINA, the HTA, the ERS and PREPA are seeking relief pursuant to Title III, the automatic stay is once more applicable to these entities. Id. § 2194(d)(1)(C). The Oversight Board, however, has not filed a Title III petition on behalf the UPR. Consequently, the UPR is no longer protected by the automatic stay set forth in PROMESA section 405, 48 U.S.C. § 2194.[11]

## B. Subject Matter Jurisdiction

■■■ Because "[f]ederal courts are courts of limited jurisdiction," the Court must "begin by ensuring that [it has] jurisdiction to reach the questions presented." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire *sua sponte* into its

---

**9.** PROMESA establishes a seven-member Oversight Board for Puerto Rico. 48 U.S.C. § 2194(b)(1), (e)(1)(A). "The purpose of the Oversight Board is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." Id. § 2121(a). The Oversight Board operates as an entity within the Government of Puerto Rico, id. § 2121(c), and is given broad authority over the Commonwealth and any of its instrumentalities that the Board designates as "covered" instrumentalities, id. § 2121(d)(1). For instance, the Oversight Board has the authority to develop, review, and approve territorial and instrumentality fiscal plans and budgets, id. §§ 2141–2142; to enforce budget and fiscal plan compliance, id. §§ 2143–2144; to seek judicial enforcement of its authority to carry out its responsibilities under PROMESA, id. § 2124(k); and to intervene in any litigation filed against the Commonwealth or its instrumentalities, id. § 2152. The Over-

sight Board designated the UPR as a covered instrumentality on October 30, 2016. "List of Initial Covered Entities under the Law," Financial Oversight and Management Board for Puerto Rico (Oct. 30. 2016), https://junta supervision.pr.gov/index.php/en/documents/.

**10.** The Oversight Board commissioned Prime Clerk LLC to maintain filings and other records pertaining to PROMESA litigation. Dockets relating to litigation commenced pursuant to Title III are available at https://cases. primeclerk.com/puertorico.

**11.** Voya seeks relief from the automatic stay pursuant to section 405(e); 48 U.S.C. § 2194(e). (Docket No. 1 at p. 13.) The Court deems that this request is moot. As previously stated, the automatic stay protecting the UPR from litigation is no longer in effect. Consequently, there is no applicable stay upon which this Court may grant relief.

own subject matter jurisdiction."). Voya, the party invoking federal jurisdiction, carries the burden of proving its existence. See Munic. of San Sebastian v. P.R., 89 F.Supp.3d 266, 267 (D.P.R. 2015) (Besosa, J.) (citation omitted). The Court previously ordered Voya to show cause as to why this action should not be dismissed for lack of subject matter jurisdiction.[12] (Case No. 16–2519, Docket No. 39.) Both parties submitted supplemental briefs pursuant to the order to show cause. Id. (Docket Nos. 40, 41.)

Voya concedes that subject matter jurisdiction pursuant to PROMESA section 405 is moot because the automatic stay expired on May 1, 2017. (Docket No. 40 at p. 1.) Voya, nonetheless, argues that the Court has jurisdiction to adjudicate this case pursuant to PROMESA sections 407(a) and 306(a)(2). 48 U.S.C. § 2195(a), 2166(a)(2). (Docket No. 40 at pp. 5–10.) Having thoroughly considered the arguments of the parties, the Court is satisfied that subject matter jurisdiction does, indeed, exist in Voya Institutional Trust Co. v. Univ. of P.R. et al., Case No. 16–2519.[13]

### 1. PROMESA Section 407(a)

Subject matter jurisdiction cannot rest on PROMESA section 407(a). This section provides that:

> While an Oversight Board of Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

48 U.S.C. § 2195(a). Without more, section 407(a) appears to grant jurisdiction

---

**12.** Voya initially invoked the Court's subject matter jurisdiction by arguing that transfer of plan assets implicated PROMESA's automatic stay. For instance, the automatic stay bars litigation to "obtain possession of property of the Government of Puerto Rico or of property from the Government of Puerto Rico or to exercise control over property of the Government of Puerto Rico." 48 U.S.C. § 2194(b)(3). Additionally, section 405 prohibits claims for remedies "conditioned upon the financial condition of, or the commencement of a restructuring, insolvency, bankruptcy, or other proceeding" during the automatic stay. Id. at § 2194(j). The Court declined to address whether the transfer of plan assets to the UPR's broad of trustees violated PROMESA because the automatic stay expired, and the Oversight Board has not filed a Title III petition on behalf of the UPR. The remaining claims set forth by Voya were rooted in Puerto Rico law. Namely, Voya sought declaratory relief pursuant to the Moratorium Act, and the plan agreement. Neither the Moratorium Act nor the plan agreement, a contract between Voya and the UPR, established federal jurisdiction. Accordingly, the Court ordered

Voya to demonstrate whether subject matter jurisdiction exists in this matter. (Docket No. 39.)

**13.** This opinion and order addresses only whether subject matter jurisdiction exists, and whether this case should be transferred to the Title III case relating to the Commonwealth of Puerto Rico. PROMESA section 309 provides that a district court may, in the interests of justice, abstain from "hearing a particular proceeding arising in or related to a case under this title." 48 U.S.C. § 2169. This Court recognizes, however, that "[t]he bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention." Fed.R.Bank.P. 5011, Comment (b); In re González, 795 F.3d 288, 292 (1st Cir. 2015) ("In the course of considering this removed action on remand, the bankruptcy court, in consultation with the parties, is of course free to clarify the posture of the Trustee's fraudulent conveyance claim."). Consequently, on the question of abstention, this Court defers to the court which has been appointed to adjudicate the Commonwealth's Title III case.

to this Court because: the Oversight Board is in existence, the UPR is a covered instrumentality, and the UPR's creditors have an interest in plan property. Furthermore, PROMESA section 106 specifies that, with the exception of Title III cases and orders to enforce subpoenas, any action "arising out of this Act, in whole or in part, shall be brought in a United States district court for the covered territory." 48 U.S.C. § 2126(a). According to PROMESA section 407(b), however, "[a] **creditor**[14] may enforce rights under this section by bringing an action in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 2195(b) (emphasis added). Voya is a trustee in possession of plan property, not a creditor. The Court presumes that "Congress acts intentionally and purposefully in the disparate inclusion or exclusion" of statutory terms. U.S. v. Councilman, 418 F.3d 67, 75 (1st Cir. 2005). Absent from PROMESA section 407(b) are trustees. Consequently, section 407(a) is inapposite because Voya is not a creditor.

## 2. PROMESA section 306(a)(2)

The Court is nevertheless satisfied that it does, indeed, possess subject matter jurisdiction pursuant to PROMESA section 306(a)(2) because this action is "related to" the Commonwealth of Puerto Rico's Title III petition. PROMESA section 306 governs jurisdiction in relation to a Title III petition, stating that:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district

courts, original but not exclusive jurisdiction of all civil proceedings arising under this title, or arising in or **related to** cases under this title.

48 U.S.C. § 2166(a)(2) (emphasis added). "Related to" subject matter jurisdiction is present because the disposition of this action may conceivably affect the Commonwealth's Title III case.

■ PROMESA incorporates the Bankruptcy Code by reference and with certain exceptions, setting forth identical language in Title III regarding jurisdiction. 48 U.S.C. § 2161(a). Courts rely on bankruptcy jurisprudence for guidance in the PROMESA context. See Brigade Leveraged Capital Structures Fund. Ltd. v. Garcia–Padilla, 217 F.Supp.3d 508 (D.P.R. 2016) (Besosa, J.) (relying on precedent interpreting the Bankruptcy Code for guidance regarding the automatic stay set forth in PROMESA). Accordingly, the meaning attributed to "related to" jurisdiction by bankruptcy courts will inform this Court's analysis.

■ The bankruptcy corollary of PROMESA section 306(a)(2) is 28 U.S.C. section 1334 ("section 1334"), titled "Bankruptcy cases and proceedings." In language similar to PROMESA section 306(a)(2), section 1334 states:

> [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or **related to** a case under title 11.[15]

---

14. According to the Bankruptcy Code, a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. § 101.

15. In this Court, chapter 11 bankruptcy cases and "all proceedings arising under … or

arising in or related to" a chapter 11 bankruptcy case are referred automatically to the bankruptcy court pursuant to the Court's General Order of July 19, 1984. Juan Torruella, Resolution (July 19, 1984), http://www.prd.uscourts.gov/sites/default/files/documents/88/BankruptcyCases.pdf. Before referral to a bankruptcy court, however, a district court

28 U.S.C. § 1334(b) (emphasis added). In essence, district courts have jurisdiction over all civil proceedings sufficiently related to bankruptcy petitions.

 The First Circuit Court of Appeals has held that the "the usual articulation of the test for determining whether a civil proceeding is 'related to' bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." [16] In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (concluding that the bankruptcy court had subject matter jurisdiction because the disputes would "put the [debtor's] estate at risk of liability for what could be a substantial damage award."). In fact, "[t]he statutory grant of 'related to' jurisdiction is quite broad," extending to "the entire universe of matters connected with bankruptcy estates." In re Boston Regional Med. Ctr., Inc., 410 F.3d 100, 105 (1st Cir. 2005) (citation omitted); see Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth."). Courts must determine the existence of "related to" jurisdiction on a case-by-case basis. Bos. Reg'l. Med. Ctr.,

410 F.3d at 107 ("The language of the jurisdictional statute, 28 U.S.C. § 1334, is protean, and what is 'related to' a proceeding under title 11 in one context may be unrelated in another.") In sum, the existence of federal jurisdiction hinges on whether this case is sufficiently related to the Commonwealth's Title III petition.

 The Court's analysis of related to jurisdiction begins with the Commonwealth's Title III case. The automatic stay order issued by Judge Swain suggests that federal jurisdiction exists in this action. Case No. 17-bk-3283, Docket No. 543. The order states that "Title III applies in all respects to (a) government officials (including, without limitation, the Governor)." Id. at p. 4. In fact, the order specified that the case before this Court, Voya Institutional Trust Co. v. Univ. of P.R., is a "[p]repetition [l]awsuit challenging the validity of certain measures under PROMESA." Id. at p. 8. The Title III court's designation of Voya Institutional Trust Co., Case No. 16-2519, as a case having some connection to the Commonwealth's Title III petition suggests that this Court possesses "related to" jurisdiction.

 Additionally, this Court has "related to" jurisdiction because the Governor

must confirm its own jurisdiction. Muratore v. Darr, 375 F.3d 140, 147 (1st Cir. 2004) (denying plaintiff's request to transfer matter to bankruptcy court rather than dismiss for lack of subject matter jurisdiction because "Rule 12(h)(3) of the Federal Rules of Civil Procedure states that a court 'shall dismiss' an action over which it lacks subject-matter jurisdiction").

16. With In re G.S.F. Corp., the First Circuit Court of Appeals adopted verbatim the Pacor test, first articulated by the Third Circuit Court of Appeals. See Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984). The Pacor court elaborated that a case "related to" the bankruptcy petition "need not necessarily be against the debtor or against the debtor's property," and that "an action is related to

bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. at p. 994. This broad application of "related to" jurisdiction is the rule established by the Supreme Court of the United States and is the majority rule of sister circuits. See Celotex v. Edwards, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); In re Lemco Gypsum, Inc., 910 F.2d 784 (11th Cir. 1990); In re American Hardwoods, Inc., 885 F.2d 621 (9th Cir. 1989); In re Titan Energy, Inc., 837 F.2d 325 (8th Cir. 1988); In re Wood, 825 F.2d 90 (5th Cir. 1987); In re Dogpatch U.S.A., Inc., 810 F.2d 782 (8th Cir. 1987); In re A. H. Robins Co., Inc., 788 F.2d 994 (4th Cir. 1986).

of Puerto Rico, a defendant in this litigation, is the "chief executive" of the Title III debtor, the Commonwealth. PROMESA § 5(12); 48 U.S.C. § 2104(12). "Related to" jurisdiction encompasses "suits between third parties which have some effect on the administration of the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). For instance, indemnification claims held by a third party litigant against a bankruptcy debtor substantiates "related to" jurisdiction. In re Farmland Indus., 567 F.3d 1010, 1021 (8th Cir. 2009); see In re Extended Stay Inc., 435 B.R. 139, 150 (S.D.N.Y. 2010) (Swain, J.) ("the potential for an indemnity claim by Bank of America, [is] sufficient to render Bank of America's adversary proceeding, 'related to' Debtors' bankruptcy proceedings within the meaning of 28 U.S.C. § 1334(b)."). Because Voya sued the Governor of Puerto Rico in his official capacity, this case necessarily implicates the Commonwealth, that is, the Title III debtor. What is more, the UPR is an instrumentality of the Commonwealth. Accordingly, it is apparent to the Court that the outcome of this litigation may ultimately have an effect on the assets that form part of the Commonwealth's Title III estate, and could "conceivably have an[ ] effect" on its Title III petition. In re G.S.F. Corp., 938 F.2d at 1475 (1st Cir. 1991).

To be clear, Voya need not establish with "certainty, or even [a] likelihood" that the actions before this Court will affect the Commonwealth's bankruptcy estate to establish "related to" jurisdiction. In re Enivid, Inc., 364 B.R. 139, 147 (Bankr. D. Mass. 2007) (citation omitted). It is sufficient that the plan's assets residing in a rabbi trust may become part of the Title III estate. See Goodman v. Resolution Trust Corp., 7 F.3d 1123 (4th Cir. 1993)

(once a grantor files for bankruptcy, the rabbi trust corpus becomes property of the grantor's bankruptcy estate).

The Court emphasizes that the Title III adjustment of debts for the Commonwealth commenced on May 2, 2017, less than three months ago. The full implications of the Commonwealth's Title III case remain uncertain. Courts proceed judiciously before resolving matters relating to a bankruptcy estate, particularly before reorganization. See In re Almac's, 202 B.R. 648 (D.R.I. 1996) ("Prior to confirmation of a plan of reorganization, therefore, nearly any suit by or against the debtor may be entertained in federal court: the outcome of nearly any such suit will have an effect upon the debtor's estate.") (citation omitted). Accordingly, Voya Institutional Trust Co. v. Univ. of P.R. et al., Case No. 16–2519 (FAB), is transferred to Bankruptcy Case No. 17–bk–3283 (LTS) pursuant to PROMESA Section 306(d)(3). 48 U.S.C. § 2166(d)(3) Because PROMESA section 306(a)(2) grants this Court jurisdiction to adjudicate Voya Institutional Trust Co., et al., Case No. 16–2519 (FAB), whether the action removed from the Court of First Instance involving the same trust property, Univ. of P.R. v. Voya Institutional Trust Co., Case No. 17–1014 (FAB), should be remanded is a matter for Judge Swain to address. Consequently, Univ. of P.R. v. Voya Institutional Trust Co., Case No. 17–1014 (FAB), is also transferred to Bankruptcy Case No. 17–bk–03283 (LTS).

## III. Conclusion

For the reasons set forth above, the following actions are **TRANSFERRED** to Bankruptcy Case No. 17–bk–03283 (LTS): Voya Institutional Trust Co. v. University of Puerto Rico, et al., Civil No. 16–2519 (FAB), and University of P.R. v. Voya

Institutional Trust Co., Civil No. 17–1014 (FAB).

IT IS SO ORDERED.